■ MOEIN INSANALLY, Respondent, v BIBI H. INSANALLY, Appellant. [644 NYS2d 192]

The parties were married in 1986 in New York and resided in Queens County. On April 13, 1992, the parties' only child,

Felicia, was born in New York. The plaintiff-husband is a citizen of Guyana and would periodically return to that country for extended visits. In February 1994, the plaintiff took the child to Guyana, ostensibly for a six-month visit with plaintiff's family. In that same month, the husband began the underlying action for divorce on the ground of abandonment by the wife. He filed a stipulation of settlement, dated February 11, 1994, which awarded him a judgment of divorce on the basis of abandonment, custody of the child with permission to relocate to Guyana, title and possession of the marital residence, and any other marital assets in New York or elsewhere. The defendant-wife alleged that she never signed any such stipulation, and first became aware of it in August 1994, when her husband returned from Guyana without the child. At that time, he asked her to go to Guyana with him, and when she refused, called the police to have her ejected from the marital home, showing them the alleged stipulation which gave him possession of the residence.

The Supreme Court, thereafter, vacated the judgment of divorce and remanded the issue of the validity of the stipulation to a Special Referee to hear and report. (The Referee later found the Agreement to be invalid.) However, the court declared that it did not have jurisdiction over the issue of custody of the child.

The IAS Court erred in finding that no jurisdictional predicate existed in New York. The underlying action for divorce was commenced by the husband in New York and the stipulation of settlement contains a clause stating: "All matters affecting the interpretation of this Stipulation and the rights of the parties hereto shall be governed by the laws of the State of New York". However, it is entirely possible that a court may possess jurisdiction to grant a divorce without the ability to determine custody (*see,* Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, at 302).

More importantly, this State was clearly the home State of the child, who was born an American citizen in this State and raised here until removed under false pretenses by the father. (For the limited purpose of deciding whether a custody hearing is warranted, the mother's allegations concerning the actions of the father are accepted by us as true.)

Pursuant to Domestic Relations Law § 75-d (1), jurisdiction is established where:

"(a) this state (i) is the home state of the child at the time of the commencement of the custody proceeding, or (ii) had been

the child's home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent * * * continues to live in this state * * *

"(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships".

While the mother filed her motion for custody a few days after the six month period had expired, she did so within forty-eight hours after she learned that the father had falsely filed a stipulation in a divorce action of which she was unaware and in which she allegedly consented to his custody of the child. The child and *both* parents have "a significant connection with this state" and there is "substantial evidence" in New York regarding the child's upbringing and future care (*id.* [b] [i], [ii]). The general purposes of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a *et seq.*) include an intent to "deter abductions and other unilateral removals of children undertaken to obtain custody awards" (Domestic Relations Law § 75-b [1] [e]). Although the plaintiff appears to have obtained an order of custody from the Guyana court, a showing that the plaintiff deceived the defendant in removing the child from New York would violate the intent of the statute and militate against the extension of comity to such a foreign decree. Concur—Murphy, P. J., Sullivan, Wallach, Nardelli and Tom, JJ.